## Case No. 14,068.

TOBIN et al. v. WALKINSHAW et al.

[1 McAll. 26; [1] 5 Am. Law Reg. 106.]

Circuit Court, N. D. California. July, 1855.

PLEADING IN EQUITY—ANSWER—WANT OF PARTIES —NOMINAL PARTIES—JURISDICTION.

1. Matter of avoidance in an answer responsive to the bill on a motion for an injunction, is to be deemed as the affidavit or sworn statement of the defendant;—on the trial it must be proved.

[Cited in U. S. v. Parrott, Case No. 15,998.]

2. A plea for want of parties is not matter in abatement. It goes in bar to the whole bill. If the defect be fatal, it may be relied on by way of plea or in the answer.

3. If a joint interest is vested in the defendants with absent parties, the court has no jurisdiction; if the interest is separable, the jurisdiction attaches

4. The act of congress of February 28, 1839 [5 Stat. 321], and the 49th rule of equity of the circuit courts of the United States, enable the court to dispense with nominal and, in some cases, necessary parties, but never with a party deemed indispensable.

[Cited in Alexander v. Horner, Case No. 169.]

5. Where one is out of the jurisdiction of the court, the fact should be made to appear in the pleadings; and it should be prayed that he be made a party should he come within the jurisdiction of the court.

6. Where any necessary party is within the jurisdiction of the court, and is not made a party, there is no jurisdiction, save in case the parties are so numerous as to bring the case within the exception to the rule.

7. Where a bill omitted to make two persons who were necessary parties, and who were within reach of process; and where there were absent parties, and without the jurisdiction of the court; and the bill prayed for cancellation of conveyances in which those absent parties were interested,—the court had no jurisdiction of the case.

This was a motion for an injunction and the appointment of a receiver.

E. L. Goold and E. W. F. Sloan, for complainant.

A. C. Peachy, for defendant.

McALLISTER, Circuit Judge. Among the numerous questions which have been sub-

mitted during the argument of this motion, there is one which arrests attention in limine, and, in the view I have taken of the case, will preclude a decision on any other. That question is one of jurisdiction. In advance of any discussion on this point, I desire to advert to a question which was argued incidentally by the solicitors for the respective parties. I allude to the question—"How far is matter of avoidance in an answer to be treated as evidence by the court?" An examination of the authorities has conducted me to the conclusion that the rule is, that upon the hearing, after the answer is put in issue, new matter set up by way of avoidance must be proved by defendant; but that on a motion for, or on a motion to dissolve, an injunction, such new matter in the answer responsive to the bill is to be deemed evidence in favor of defendant, as his affidavit or sworn statement. As this opinion is necessarily very extended on what I deem the principal point in the decision of this motion, my reasons for the conclusion to which I have come in relation to the question of new matter in the answer, will be reserved for some future case or occasion.

In regard to the want of parties in this case, which gives rise to the question of jurisdiction, it has been urged by complainants, that it is too late for defendants to object a want of parties, and that this was matter only for a plea in abatement. Now, a plea for want of parties is not matter for abatement. It is a plea in bar, and goes to the whole bill, as well to the discovery as to the relief prayed. 1 Daniell, Ch. Prac. 337. Again, the rule is, that if want of parties is apparent on the face of the bill, the defect may be taken advantage of by demurrer. If such defect be vital, it may be insisted on at the hearing, and if the court proceed to a decree, such decree may be reversed. If the defect is not apparent on the bill, it may be propounded by way of a plea, or it may be relied on in a general answer. Story, Eq. Pl. § 236. In Van Epps v. Van Deusen, 4 Paige, Ch. 75, it is said, defendant is not bound to demur or plead. He may make the objection in his answer, and may have the same benefit of the objection at the hearing as if it had been taken by plea or demurrer. The thirty-ninth rule of equity expressly gives the right to defendant to avail in his answer of anything which would be good in the form of a plea in bar; and the fifty-second rule provides, that where defendant by his answer suggests the want of parties, plaintiff shall be at liberty, within fourteen days after answer filed, to set down the cause for argument upon that objection alone. These rules evidently authorize a party to avail himself of a defect for want of parties as effectually in his answer as by plea in bar. Had defendants availed themselves of the right to plead in bar, much time and discussion would have been saved. But they have the right to bring forward their objection in the form of an answer. Having done so, I am called on to decide if if there are such parties before the court as will authorize it to adjudicate upon this cause, whether this court be deemed a court of general equity jurisprudence, or whether the peculiar structure of the limited jurisdiction of this court under the constitution and laws of the United States be considered. In Cameron v. M'Roberts, 3 Wheat. [16 U. S.] 591, where the citizenship of the other defendants than Cameron did not appear on the record, the supreme court of the United States certified—"If a joint interest vested in Cameron and the other defendants, the court had no jurisdiction over the cause. If a distinct interest vested in Cameron, so that substantial justice (so far as he was interested), could be done, without affecting the other defendants, the jurisdiction of the court might be exercised as to him alone." In Mallow v. Hinde, 12 Wheat. [25 U. S.] 194, the principle is affirmed, that though the rules as to parties in equity are somewhat flexible, yet, where the court can make no decree between the parties before it, upon their own rights which are independent of the rights of those not before it, it will not act. The court say, "We do not put it on the ground of jurisdiction, but upon a much broader ground, which must equally apply to all courts of equity, whatever be their structure as to jurisdiction." In Russell v. Clarke's Ex'rs, 7 Cranch [11 U. S.] 98, the court say that merely formal parties might be dispensed with; but where parties are essential to the merits of the question, and may be much affected by the decree, such parties are indispensable.

The principle enunciated by the supreme court in the foregoing cases, is a reiteration of one universally recognized in equity jurisprudence. Story, Eq. Pl. § 137. The rule in equity differs from the rule of law, both in the necessity of joining all interested parties in the suit, and in the option of joining them as plaintiffs or defendants. At law, a disputed issue is alone contested, the immediate disputants are alone bound by the decision, and they alone are parties to the action. In equity, a decree is asked, and not a decision only; and it is therefore requisite that all persons should be before the court whose interests may be affected by the proposed decree, or whose concurrence is necessary to a complete arrangement. Adams, Eq. 699, 703, 704. The act of congress of February 28, 1839 (5 Stat. 321), and the forty-seventh equity rule of this court, have been cited by complainant's solicitors and relied on to sustain the jurisdiction in this case. They have also adduced the case of Doremus v. Bennett [Case No. 4,001], as to the interpretation of the act of congress. That was a case at law. Now, it is true, that by their provisions, the circuit courts of the United States are authorized, in certain cases, to proceed against one or more defendants in the absence of oth-

ers, where such others are not inhabitants of or found in the district when and where the suit is brought. But both the act of congress and the forty-seventh rule have been elaborately considered, and the construction of them fixed, by the supreme court of the United States in the recent case of Shields v. Barrow, 17 How. [58 U. S.] 130. In that case it is settled, that neither the act of congress nor the rule impinges on the general doctrine, and that if the citizenship of parties be such that their joinder would defeat the jurisdiction of the court, such fact will not supersede the necessity of making them parties; so far as the said act and rule apply to suits in equity, it is to be understood they are no more than the legislative affirmance of the rule previously established by the adjudications of the supreme court of the United States. The act of congress removed any difficulty as to jurisdiction between parties who are competent under the general rule of equity jurisprudence; and the forty-seventh rule of practice is only a declaration, for the government of practitioners and courts, of the effect of the act of congress and the previous decisions of the supreme court. "It remains," say the court, that a circuit court "can make no decree between the parties before it, which so far involves or depends upon the rights of an absent person that complete and final justice cannot be done between the parties to the suit without affecting those rights." Id. 141.

The general rule as to the parties to a bill is not, then, altered by the act of congress and the equity rule cited by the solicitors for complainants; nor is that rule affected by the limited jurisdiction of the courts of the United States. The fact that a person is without the reach of the process of the court will not dispense with the necessity of making such person a party, provided he be an indispensable one. Parties to bills are divided into three classes (Shields v. Barrow, 17 How. [58 U. S.] 139): 1. Nominal. 2. Necessary. 3. Indispensable. If a nominal party be beyond the reach of the process of the court, being a party having no interest to be affected by the proposed decree, that fact cannot defeat the jurisdiction of the court. An instance of this class of parties is, where one is joined as a party for sake of conformity in the bill, having no interest, legal or equitable, to be affected by the decree. The second class, known as necessary parties, are such as have an interest in the controversy, and ought to be made parties to enable the court to do complete justice by adjusting all the rights involved; still, if their interests are separable from those before the court, they are not indispensable parties. Mr. Justice Curtis has referred, as an instance of a necessary party, to the case of Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 738. This case has been cited by the solicitors for complainants, as the strongest case; and in their written brief upon the point under consideration, they say: "This

(case) seems to us conclusive as to the rule in a case of trespass." It is due to the able counsel and the importance of the question, that proper consideration be paid to this case. We shall give it that consideration hereafter. The third class of cases enumerated by Mr. Justice Curtis are the indispensable, who have such an interest in the controversy that a decree cannot be made without affecting that interest; and the inquiry is, do the pleadings in this case disclose the fact, that there are absent persons whose interests make them indispensable parties? The rule we are considering laid down generally is, that where the rights of an absent person will be much affected by the decree asked for, the court cannot proceed to a decree. This general rule is to be applied to the circumstances of each case as they shall arise. By ascertaining how this rule has been applied in precedent cases, we will understand how to apply it to the case at bar.

In Mallow v. Hinde, 12 Wheat. [25 U. S.] 194, the complaint set up a claim to a tract of land under a survey, No. 537, in the name of John Campbell, who, by his will, devised and bequeathed this, among other muniments of title, to Richard Taylor and others, executors in trust for the children of his sister. Taylor alone qualified, and took upon himself the execution of the trust. He never assigned or conveyed to the cestui que trusts, but permitted them to take the management of the claim into their own hands. Subsequently, when these last had arrived at full age, they entered into contracts with one Elias Langham, whereby he became entitled to survey No. 537, and he subsequently conveyed the land to complainants. Thus stood the case, when the defendant Hinde, with full knowledge of the rights of complainant, procured from Taylor a military warrant belonging to him (Taylor) in his own right, made an entry thereof in his (Hinde's) right, and having caused a survey to be made thereupon covering survey No. 537, obtained a patent for the land. Having thus got the legal title, he instituted actions of ejectment against complainants, and obtained judgments of eviction against them. A bill, setting forth the whole transaction, charging notice of complainant's rights, and gross fraud against defendant was filed, which prayed for an injunction to enjoin defendant from proceeding on his judgments, and for general relief. Here was as tortious an act and as great fraud as could be perpetrated under the forms of law, charged upon defendant. The defendant denied all fraud, set up the bona-fides of the transaction, neither admitted nor denied the contracts between the cestui que trusts and Langham, and insisted, if there were any such they were fraudulent. Neither Taylor nor the cestui que trusts were made parties, being out of the jurisdiction of the court. An objection for want of parties arose, and it was insisted that both Taylor and the cestui que trusts were indispensable parties. The court

so decided. They say: "The complainants claim through certain contracts made between Langham and the cestui que trusts. How can a court of equity decide that such contracts ought to be decreed specifically without having the parties before them? Such a proceeding would be contrary to all rules which govern a court of equity, and against the principles of natural justice." In respect to Taylor, it was urged that he had parted with his "incidental right;" but the court determined that he and the cestui que trusts were indispensable parties. "If," say the supreme court, "the United States courts were courts of general jurisdiction, it could not be doubted that the absent persons would be indispensable parties." But it is urged, that the rule which prevails in courts of equity generally, that all the parties in interest shall be brought before the court, &c., ought not to be adopted by the courts of the United States, because, from the peculiar structure of their limited jurisdiction over persons, the application of the rule in its full extent would often oust the court of its acknowledged jurisdiction over the persons and subject before it. In answer to such argument, the court proceeds to show that no modification of the rule to an extent by which the rights of an absent person may be materially affected, is admissible, and concludes by saying—"We put this case on the ground that no court of equity can adjudicate directly upon a person's rights without the party being actually or constructively before the court;" and the bill was found defective for want of parties. In Brookes v. Burt, 1 Beav. 106, a bill was brought by one tenant in common against defendant, who, it was alleged, had wrongfully and in defiance of complainants' title, entered into possession and received the rents and profits of the property; it was further alleged, that complainants had commenced an action of ejectment for the premises, which defendant defended; that before the trial of such ejectment, plaintiffs discovered that the property was subject to an outstanding term which was vested in one Mr. Worsley, which defendant threatened to set up to defeat the action at law; and, lastly, the bill alleged that James Wavel, the co-tenant in common with plaintiffs, was at the time residing out of the jurisdiction of the court. (It should be observed here, that the objection was, that the co-tenant in common was not made a party complainant.) There was a general demurrer for want of equity, on the ground that Wavel, the co-tenant, and Worsley, in whom the outstanding term was vested, were indispensable parties to the bill. The court decided that the holder of the outstanding term was not, but that the co-tenant was. On the argument it was urged in relation to Wavel, that he was part owner of the property; that, among other things prayed for, was a declaration of right; the delivery of the title-deeds of the property, and for an account of the rents and profits, matters in which the absent party was interested, and that therefore the suit which sought to deal with the inheritance was defective for want of parties. To this complainants replied, that the proposition embodied in the objection was, that if there be twenty tenants in common, and a stranger get possession, one of the tenants in common cannot recover the possession of the rents and profits from the stranger without making the other nineteen persons with whom he has no dispute parties to the suit; that this was an ejectment bill, and must be governed by the same rules as an ejectment at law; that Wavel, the co-tenant, was out of the jurisdiction of the court. Lastly, it was urged that the complainants were entitled to some portion of the relief prayed for, and, at the time of the hearing, they might waive part of the relief sought, and obtain the rest; that the demurrer, therefore, covered too much, and must be overruled. Such were the arguments by complainants in that case; and they are similar to those urged in this case by complainants' solicitors. To all the master of the rolls replied: "It appears to me, this demurrer must be allowed. * * * Where the demurrer is for want of parties, it is not sufficient for the plaintiffs to say, that there is some part of the relief which can be abandoned at the hearing. * * * The bill prays for accounts and the delivery up of title-deeds. * * * I conceive Wavel is a necessary party. * * * The demurrer must be allowed." 1 Beav. 111. In Turner v. Hill, 11 Sim. 1, a bill was filed to compel defendant to transfer her share in a mine to complainant, which it was alleged she had obtained by fraudulent means, and to account for and pay to plaintiff the profits thereof, and that a receiver might be appointed of the profits of the mines. It was objected, that the other adventurers in the mine were indispensable parties, inasmuch as an account was called for; and the vice-chancellor decided against the objection on the sole ground that the bill did not call for an account of the mine, but for that of the specific share sued for. He says: "That passage in the prayer of the bill which asks for a receiver of the profits of the whole mines, is clearly a mistake, for the plaintiff is seeking, by his bill, to recover no more than a hundredth share of the mines; and therefore, in common fairness of construction, that passage ought to be referred to the profits of that share." Considering such to be the fair construction of the bill, he decided it was unnecessary to make the other shareholders parties. A similar decision, for the same reasons, was made in the case of Turner v. Borlase, 11 Sim. 17; and appeal was carried to the lord chancellor (Id. 18), and the decision in it confirmed, the distinction drawn between a prayer for the profits of the mine and those of the particular share sued for, being carefully sustained. In giving his decision on the appeal, the chancellor said: "It was, however, observed, that the bill prayed a receiver of the profits arising from the said mines; and if that must necessarily be intended to

mean the general profits of the mines, it would be asking for that which could not be granted, in the absence of all the other adventurers; but I do not understand the expression to have that meaning. All the case made and all the relief asked, relate to the particular shares," &c., "and I must understand the profits as to which the receiver is asked, to be the profits spoken of, which makes the whole consistent, and for which purpose the other adventurers would not be necessary parties." Id. 20. The decision of the court below was therefore affirmed, and the demurrer overruled; but the chancellor, in conclusion, declared, that his judgment on the demurrer was on the facts admitted by it; but if the facts at the hearing so admitted were not sustained, the opinion he had just delivered could have no bearing on the case.

The principles deducible from foregoing authorities are—1. That the general rule in equity is, that all persons whose interests may be materially affected by a decree, must be before the court to enable it to act. 2. That this rule may be relaxed so as to dispense with formal, and, under special circumstances, with necessary parties. 3. That the rule which has been announced by the decisions of the supreme court of the United States is but a reiteration of the doctrine of a court of equity in the application of its chancery jurisdiction. 4. That the act of congress of February 28, 1839, and the forty-seventh rule of equity, which allow one or more defendants to be sued in the absence of others without the jurisdiction of the court, apply only to competent parties. are simply an affirmance of previous decisions of the supreme court of the United States, and do not vary the rule as to indispensable parties. [Shields v. Barrow], 17 How. [58 U. S.] 141. 5. That the peculiar structure of the limited jurisdiction of the courts of the United States does not abolish or modify the rule as to indispensable parties; and the fact that such are without the jurisdiction, will not enable the court to proceed against the parties before it. 6. That it has been decided by the supreme court of the United States [Mallow v. Hinde], 12 Wheat. [25 U. S.] 194, that where complainant seeks to set aside a fraudulent purchase of land by defendant, and to enjoin his proceeding on a judgment he had obtained in an ejectment at law against complainant, the party through whom the latter claimed his equitable title was an indispensable party. 7. That it has been decided in the English chancery (1 Beav. 106), that one tenant in common cannot, without joining with him his co-tenant, sustain a bill in equity against the trespasser in possession, and enjoin him from setting up an outstanding term, inasmuch as the bill prayed for the delivery of title deeds and account of the rents, these being matters in which the absent person was interested, and was therefore an indispensable party; that where a question arises as to parties, it is not for the complainant to say, the court must proceed to a hearing when he (complainant) may disclaim a part of the relief and obtain the balance; and, lastly, that the fact that the absent party resided out of the jurisdiction of the court, made no difference in the application of the rule. These last principles are deducible from the case of Brookes v. Burt, 1 Beav. 106. It is to be again noted, that this was a case brought by one tenant in common to assert a right against a wrong-doer; and the absent tenant in common was deemed an indispensable party. How much stronger is the case at bar, where it sought to injuriously affect the rights of part owners, who are absent! If, in the former case, the person is deemed an indispensable party, a fortiori he must be so deemed in the latter. 8. That it has been decided that, where bill is filed to compel defendant to transfer to complainant a share in a mine fraudulently obtained by him, and to account for the profits thereof, jurisdiction will be sustained on the ground that the bill seeks only a specific share in the profits thereof; but it is expressly affirmed, that if the bill had sought for a delivery of title-papers, which touches the inheritance, or for an account of the mines, these being matters in which the other adventurers in the mine were interested, the court could not proceed, such other adventurers being indispensable parties.

Let us apply these principles to the case at bar. The complainants in their bill allege title to certain premises situate in this state; that defendants have wrongfully entered into possession thereof, and are committing a trespass thereon by cutting down timber and excavating mines or minerals therefrom, and that they (the complainants) have instituted an action of ejectment against the defendants for the purpose of evicting them therefrom. The bill prays against defendants—1. That an account be taken for the year preceding the filing of the bill, of the amount of timber cut and destroyed on the premises, and a similar account of the quicksilver so taken. 2. That injunction may issue to restrain defendants from further trespass. 3. That a receiver be appointed to take charge of the mine, and the reducing establishment connected therewith, and all the products thereof, now within the jurisdiction of this court. 4. That on the final hearing, the conveyances made, under which defendants claim title, may be ordered to be delivered up and canceled, the injunction made perpetual, and for general relief.

An answer has been filed, and the facts necessary to be looked to, in connection with the question as to parties, are found on pages 43, 44, and 45. The facts disclosed are, that there are proprietors of the mine and land other than defendants. That of

them, four in number, viz.: Eustaquio Barron, Eustachio M. Barron, Martin La Piedra, and Maria Ortiz, are without the jurisdiction of this court; that John Parrott and James R. Bolton are also co-owners of the premises, and that they are within the reach of the process of the court. It is further averred, that long before the institution of the action of ejectment at law, and before the exhibiting of the bill, a contract was entered into by the owners of the mine, with certain persons, for the working of them; and it is contended that both the proprietors and contractors should be made parties.

Upon the authority of the cases cited above, I cannot doubt that the owners are indispensable parties in this case. In the opinion of the court, the authority of cases is hardly needed.

What is the character of this bill? It does not seek the interposition of this court to recover the specific shares of the mine or land, and the profits thereof, property of the defendants. If it did, it would come within the authorities, and the limits of natural justice. But the bill asks, that an account of profits belonging to other people, and title-deeds to property in which those other and absent persons are as much interested and to a larger extent than the defendants themselves, shall be canceled. It further asks that the profits of all the owners should be wrested from them and paid into the hands of a receiver. Now, can this court call for an account of the profits of the mine, or arrest such profits, or direct a cancellation and delivery of the title-deeds, in the absence of parties both within and without the reach of its process, who are interested in those profits and those title-deeds? Were the court to do any one of these things, would not the rights of the absent be materially affected? It is urged, that the court can entertain jurisdiction of this case, issue the injunction, and wait until the hearing, when the complainant may waive a portion of the relief prayed for, and the court can decree so much of that relief as they may be entitled to. This course would be contrary to authority, and in violation of the reason of the thing. We have seen that the lord chancellor has said in Brookes v. Burt, that when the question of parties arises, it is not sufficient for the complainant to say "that there is some part of the relief which can be abandoned at the hearing." Again, apart from authority, on what ground of justice or reason can this court arrest, by injunction, the profits of the mine from absent persons until the hearing, for the purpose of ultimately getting an account from the defendants of their specific interests? Would the arrest of these profits "affect" the interest of the absent owners? If so, should a court of equity proceed in their absence? "Audi alteram partem" is alike a dictate of natural justice and a precept of municipal law. I have searched in vain for a precedent that would justify this

course. The able counsel for complainants would have found such, if any existed. The case of Osborn v. Bank of U. S. [9 Wheat. (22 U. S.) 738], has been adduced as the authority which seems to them conclusive in favor of such jurisdiction; and it has been intimated to me by one of the counsel, that it has been exhibited to several of his professional brethren, who concur in the opinion that it is conclusive on the point. That case, therefore, claims attention. The opinion in that case occupies seventy-six pages of the reporter. To show what were the points decided, by traveling through it, would be time misspent. But there is a short method of doing this, and one, perhaps, which will conduct to a more correct conclusion than any this court could pursue. By reference to the prospectus, published by Mr. Justice Curtis, in [Shields v. Barrow] 17 How. [58 U. S.] 141, it will be found, that his plan in giving his new edition of the supreme court reports was, to endeavor to give, in the head-notes, the substance of each decision. They are designed, he says, to show the points decided by the court, not the dicta or reasonings of the court. Now, upon reference to his head-notes to Osborn v. Bank of U. S. [supra], we find that the only points which, in his opinion, were decided in that case which touch the question under consideration, are—1. A court of equity may restrain, by injunction, a public officer of a state, from acting under a void law of a state to destroy a franchise. 2. As the state cannot be joined as a defendant, its agent may be sued alone; and if he has specific moneys or notes wrongfully taken, in his possession, they may be ordered to be returned.

So far as any decision in this case goes, it does not touch the case at bar. But reference has been had to certain observations made by Chief Justice Marshall, while delivering the opinion of the court, and citations from the opinion have been inserted in the brief of solicitors for complainants, which are deemed directly applicable to the case at bar. The first citation is from [Osborn v. Bank of U. S.] 9 Wheat. [22 U. S.] 842, and is as follows: "The single act of levying the tax in the first instance, is the cause of an action at law; but that affords a remedy only for the single act and is not equal to the remedy in chancery, which prevents the repetition and protects the privilege. The same conservative principle which induces the court to interpose its authority for the protection of exclusive privileges, to prevent the commission of waste, even in some cases of trespass, and many cases of destruction, will, we think, apply in this. Indeed, trespass is destruction where there is no privity of estate. If the state of Ohio could have been made a party defendant, it can scarcely be denied that this would be a strong case for an injunction. The objection is, that, as the real party cannot be brought before the court, a suit can-

not be maintained against the agents of that party; and cases have been cited to show that a court of chancery will not make a decree, unless all those who are substantially interested be made parties to the suit. This is certainly true, where it is in the power of the plaintiff to make them parties; but if the person who is the real principal, the person who is the true source of the mischief, by whose power and for whose advantage it is done, be himself above the law, be exempt from all judicial process, it would be subversive of the best-established principles to say, that the laws could not afford the same remedy against the agent employed in doing the wrong, which they would afford against him could his principal be joined in the suit. It is admitted that the privilege of the principal is not communicated to the agent; for the appellants acknowledge that an action at law would lie against the agent, in which full compensation ought to be made for the injury. It being admitted then, that the agent is not privileged by his connection with his principal, that he is responsible for his own act to the full extent of the injury, why should not the preventive power of the court also be applied to him? Why may it not restrain him from the commission of a wrong which it would punish him for committing?"

The propositions asserted in the above observations are—1. That though the single act of an illegal tax is the subject of an action at law, its repetition makes it a continuing trespass, which a court of equity may enjoin. 2. That where the principal is exempt from all judicial process, being a sovereign state, the privilege which belongs to such principal is not communicated to the agent who does the wrong. 3. That under such circumstances the court, acting on the principle, "Lex non cogit ad impossibilia," will, at instance of complainant, issue an injunction to restrain the agent from committing the tortious act. These propositions cannot control this case: 1. Because there is no question of principal and agent in this case. 2. The necessity of dispensing with a necessary party who was exempt from judicial process, does not exist in this case. On page 846, Chief Justice Marshall says, "Had it been in the power of complainant to make it (the state) a party, perhaps no decree ought to have been pronounced." 3. Because the attempt in this case is to make defendants liable as principals in a tort, and asks the court to arrest the profits of absent parties for the purpose of making defendants responsible for the consequences of their own tortious act. There are two other citations from the opinions of the court. The first is a continuation of the first above quoted, and is in these words: "We put out of view the character of the principal as a sovereign state, because that is made a distinct point, and consider the question singly as respects the

want of parties." Here this second citation ceases, and another is taken from the succeeding page (844), as follows: "In the regular course of things the agent would pay over the money immediately to his principal, and would thus place it beyond the reach of the injured party, since his principal is not amenable to the law. The remedy for the injury would be against the agent only, and what agent could make compensation for such an injury? The remedy would have nothing real in it. It would be a remedy in name only, not in substance. This alone would, in our opinion, be a sufficient reason for a court of equity. The injury would, in fact, be irreparable; and the cases are innumerable in which injunctions are awarded on this ground." Now, this latter citation establishes this proposition, viz.: That the agent would pay over to the principal, who was exempt from all judicial process, and being unable to respond to the damages, the injury would be irreparable, and, therefore, it is ground for injunction. To this extent it goes; but the whole is dependent for its application upon the fact, whether defendant is responsible upon an implied contract solely for the amount in his hands. This is evident, as the court puts the hypothesis: "Now, if the party before the court would be responsible for the whole injury," &c.

To prove why the court considers the defendant liable, it is necessary to cite the remarks which intervene between the two quotations cited above: "Now, if the party," say the court, "would be responsible for the whole injury, why may he not be restrained, &c. The appellants found their distinction on the legal principle, that all trespasses are several as well as joint, without inquiring into the validity of this reason, if it be true. We ask if it be true. Will it be said, that the action of trespass is the only remedy given for this injury? Can it be denied that an action on the case for money had and received to the plaintiff's use, might be maintained? We think it cannot; and if such an action might be maintained, no plausible reason suggests itself to us for the opinion that an injunction may not be awarded to restrain the agent with as much propriety as it might be awarded to restrain the principal, could the principal be made a party." It was on the ground, then, that the equitable action for money had and received could be maintained against the agent,—for money in his hands, and received by him in legal consideration to the use of plaintiff,—that Chief Justice Marshall uses the observations quoted, to sustain the proposition that injunction might issue to restrain the payment over by the agent to his principal. Can this apply to the case at bar? No one pretends that such action could lie against defendants in this case. Independently of all other views, there is one which covers this whole case, and precludes the idea that it can control the

one at bar.. It has been shown that the absent parties are indispensable in this case. Such was not the fact in the case relied on. The state of Ohio was but a necessary party, and there was a discretion in the court to dispense with such party. True, the interest of the state, in quantity, extended to the whole amount in controversy; but what was the nature of that interest? It was not a vested nor an equitable interest. It was never in the possession of the absent party; nor had the state an equitable right to it, for the court never could recognize the possession of a fund, or an equitable right to possession in the principal, where that fund had been raised in fraudem legis by the agent. The object of the bill was to arrest the fund in its transit from the agent to the principal. Hence, the nature of the interest held by the state was, to use the language of Mr. Clay, in his argument, "a collateral and contingent interest," which will not make a party who must be joined. Hence, again, Mr. Justice Curtis, in 1855, in the case of Shields v. Barrow, 17 How. [58 U. S.] 130, in his classification of parties, enumerates several instances of the different kinds of parties, excluding the case of Osborn v. Bank of U. S. [supra], from the class of indispensable, and including it among that of necessary parties; which latter, as we have seen, may under peculiar circumstances be dispensed with. It is by attention to the distinction between necessary and indispensable parties, that the numerous decisions of the courts, made in the application of the general rule, may be harmonized.

Cases have been referred to, in which persons who are without the reach of the process of the court have been dispensed with; but in all such it will be found, that the absent persons were either formal or necessary parties, but not deemed indispensable. In this case, I am satisfied that the owners of the mines are parties whose interests must necessarily be affected by any decree which can be made in conformity with the prayer of this bill. Cases are also cited to show that the courts of the United States will consider the rule as to parties flexible where the absent persons, who should be made parties, are out of the reach of the process of the court; but in each of them it will be found, that the utmost extent to which a relaxation has been carried, has been to dispense with a necessary party only. But there is one feature in this case which distinguishes it from all others. It is, that two of the absent persons whose interest would be affected by a decree, are residents of this city and within the reach of the process of this court. The only reason for their omission as parties is the fact, that their introduction would oust the jurisdiction of this court. But if bringing them before the court, this case would be beyond its jurisdiction, can the court, by indirection, adjudicate upon their

rights, and thus do indirectly what it could not, rightfully, directly do? I think not.

The present motion is therefore denied, and it is ordered accordingly.

[See Cases Nos. 14,069 and 14,070.]